834 F.2d 1526
 9 Fed.R.Serv.3d 1138
 In re AKROS INSTALLATIONS, INC., a California corporation, Debtor.
AKROS INSTALLATIONS, INC., a California corporation,
Plaintiff-Appellant,
and
Law Office of Andres Alonso, Jr., Appellant,
v.
GRAND NATIONAL BANK; Arrow Precision Products, Inc.; and
Academy Manufacturing, Defendants-Appellees.
 No. 85-6440.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 2, 1987.
Decided Dec. 30, 1987.
 
 Thomas Tucker, Los Angeles, Cal., for plaintiff-appellant.
 John H. Baker, Orange, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before BROWNING, TANG and REINHARDT, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 The Law Office of Andres Alonso, Jr. (Alonso) appeals a judgment of the district court imposing a monetary sanction against it under Fed.R.Civ.P. 11 for bringing a frivolous appeal. Alonso appealed to the district court a decision of the bankruptcy court sanctioning it under Fed.R.Civ.P. 37(a)(4) for bringing a motion for protective order that was not substantially justified. Alonso also challenges the Rule 37(a)(4) sanction.
 
 I. PROCEDURAL BACKGROUND
 
 2
 Andres Alonso and various other attorneys in Alonso's office represented Akros Installations, Inc. Grand National Bank and other creditors (Creditors) filed a petition for involuntary bankruptcy against Akros on July 17, 1984. For the next twenty-one months or more, the Creditors attempted to obtain depositions and records from Akros officers. State records listed Fred Alexander as president and Linda Alexander as secretary of the corporation. On September 21, 1984, the Creditors subpoenaed Fred Alexander and Linda Alexander to appear at a deposition and produce documentation regarding Akros' assets. A day or two before the scheduled deposition date of October 4, 1984, Larry Hoffman of the Law Offices of Andres Alonso called James Palmer, attorney for the Creditors and asked for a continuance until October 19. Palmer reluctantly agreed, expressing a fear that the Alexanders would not appear. He complained that Hoffman's clients were especially adept at avoiding service. Hoffman stated that he would insure his clients' appearance on October 19. On October 18, an Alonso employee called Palmer to tell him that, upon the advice of Andres Alonso, the Alexanders would not appear for the deposition. A few days later, the Creditors filed a motion for an order of contempt against Fred Alexander, Linda Alexander and Alonso. Sometime thereafter, the Alexanders resigned as officers of Akros and Akros filed a new statement of officers with the Secretary of State naming Carl Baker as president of the corporation.
 
 
 3
 The contempt motion came up for hearing on November 20, 1984. The bankruptcy judge provisionally granted the motion but gave Alonso a chance to expunge the contempt citation by producing the Alexanders for deposition on December 10, 1984. Alonso and the Alexanders failed to appear and on February 15, 1985, the bankruptcy judge recommended to the district court that Alonso and the Alexanders be held in criminal contempt for failure to appear at a court-ordered deposition.[1] Alonso and the Alexanders were convicted of contempt by the district court on May 3, 1985. This court affirmed Alonso's conviction and the Supreme Court denied certiorari. Akros Installations, Inc. v. Alexander, 786 F.2d 1173 (9th Cir.) (unpublished order), cert. denied sub nom. Alonso v. Grand National Bank, --- U.S. ----, 107 S.Ct. 79, 93 L.Ed.2d 34 (1986).
 
 
 4
 While the parties appealed the contempt convictions, the Creditors continued their attempts to depose an officer of Akros Installations. On December 6, 1984, the Creditors filed a notice of deposition of Carl Baker to take place on January 4, 1985. On January 3, 1985, Alonso's office contacted the Creditors and informed them that Carl Baker had resigned as president of Akros and that no one would appear for the deposition the next day. The Creditors then filed in bankruptcy court a motion to compel the deposition. In its memorandum in opposition to the motion to compel, Alonso stated that Baker had resigned as president; that Enrique Luzzano was the only remaining officer of Akros and he had disappeared to Mexico; and that none of the former officers nor the attorney had possession or knew the whereabouts of the Akros' records. Alonso argued that judicial intervention was unnecessary because the same relief was available under the Federal Rules of Civil Procedure without court intervention.
 
 
 5
 The motion came for hearing on February 15. The court advised the parties that it could not hear the matter because it was to be transferred to another bankruptcy court. The motion was taken off the calendar. In open court, Hoffman of Alonso's office told Attorney Palmer that had he simply noticed "an officer" of Akros instead of specifying Carl Baker, an officer would be produced. In reliance upon this assurance, Palmer did not re-calendar the motion but instead filed a notice of deposition of "an officer" to be designated by Akros. The deposition was set for April 11, 1985.
 
 
 6
 On March 20, Alonso moved for a protective order under Fed.R.Civ.P. 26(c) barring the deposition and to be relieved as counsel for Akros Installations. In his memorandum in support, Hoffman argued that the protective order was justified because Akros had no officers or records to produce. At the hearing on April 11, 1985, the following exchange took place:
 
 
 7
 THE COURT: Okay. I had the great misfortune of reading all of this. This case is--if I understand it correctly, what's happening, Mr. Hoffman is that a request for a deposition of the debtor, a notice of deposition was filed and I think the deposition is set for today, isn't it?
 
 
 8
 MR. HOFFMAN: That's correct.
 
 
 9
 THE COURT: And that you filed a motion for a protective order today.
 
 
 10
 MR. HOFFMAN: Yes, Your Honor.
 
 
 11
 THE COURT: Saying, well, you can't depose the debtor because there aren't--because we're not in touch with the debtor anymore because the officers change every time there is a deposition scheduled. And besides that, the debtor is out of business, and basically the reason that you're opposing--they're still trying to just get this adjudicated, and that the reason you're trying to oppose this no longer exists because the debtor is no longer in business. And, that you want to withdraw as counsel because of the contempt proceedings put you in conflict with your client.
 
 
 12
 MR. HOFFMAN: No, Your Honor, it isn't the contempt proceedings. The reason that we're asking to withdraw as counsel is that we basically have no client, that there is no one that can--
 
 
 13
 THE COURT: Who's paying your fees?
 
 
 14
 MR. HOFFMAN: That's another problem, Your Honor. I, quite frankly, am not privy to that information in my office, but suppose I know--
 
 
 15
 THE COURT: I think Mr. Alonso should be down here, then, to answer my questions.
 
 
 16
 Let's put it this--this is a case where the attorney--it looks to me, based upon the file, which is fairly voluminous for a new case, the attorney has created a massive litigation to try to keep this adjudication from occurring, and then throws up their hands and walks away and says, "Gee, I"--and then they send down somebody who doesn't know the answers.
 
 
 17
 So, you know, as far as the--let's take it one thing at a time. As far as the motion for protective order goes since you don't have a client you can't seek a protective order on behalf of the client, and if no one appears, well, that's the problem of the parties that's seeking the deposition, I guess. And that's not grounds anyway. You have to do it another route.
 
 
 18
 And I suggest, because of the contempt proceedings, that somebody better appear at that deposition and put on the record what's happening here, and reveal what you know as to where the records are. That's not privileged information, okay? So, that's denied.
 
 
 19
 The motion to withdraw is also denied. There's not enough in front of me as to why the fact that the debtor has disappeared is reason to withdraw. I need to know who was in contact with whom. I need to know what the attorney knew. And you're not him, so you can't tell me.
 
 
 20
 Bankruptcy Court Transcript at 1-3. The bankruptcy court then proceeded to consider the Creditor's motion for expenses against Alonso under Fed.R.Civ.P. 37(a)(4). On April 22, 1985, the court filed an order denying Akros' motion for protective order and counsel's motion to withdraw and assessed a $500 sanction against Alonso.
 
 
 21
 Alonso appealed the sanction order to the district court. In its memorandum, Alonso argued that the bankruptcy court abused its discretion in awarding attorney's fees because it was substantially justified in moving for a protective order. See Fed.R.Civ.P. 37(a)(4) (expenses will be imposed "unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust."). Alonso contended that under Kakuwa v. Sanchez, 498 F.2d 1223 (9th Cir.1974), "if there can be no appearance by an officer of the corporation, it is incumbent upon counsel for the corporation to make a motion for a protective order." Plaintiff's Opening Brief at 6. Furthermore, argued Alonso, the only other alternative was for Alonso to appear at the deposition and inform the creditors that Akros had no officers. Alonso stated that this would be pointless because the creditors already knew that Akros had no officers.
 
 
 22
 The district court judge opened the September 16 hearing on the appeal with the following remarks:
 
 
 23
 What the court has before it this morning is the appeal of a bankruptcy judge's order imposing sanctions in the sum of $500 against the law firm of Mr. Alonso, and the Court has reviewed the record on appeal and the briefs of the party, parties, and has indicated by the tentative ruling that it would appear that the order of the bankruptcy court should be affirmed; and, further, that the bringing of this appeal has just aggravated the situation and would justify a imposition of Rule 11 sanctions for the taking of the appeal.
 
 
 24
 With reference to the underlying action, it seems clear that the appellant has focused upon its right to bring a motion for protective order and the problem was, within the same motion, the attorney bringing the motion for protective order told the Court that there was no officer of the corporation that could respond to a deposition, and yet, in the same motion, counsel sought to be relieved on the basis that there was no contact of the client.
 
 
 25
 When the bankruptcy judge queried the client--counsel, I should say, and I believe that was Mr. Hoffman, who is before the Court today--as to who the client was, and on whose behalf the motion for protective order was being brought, there was no satisfactory response given to the Court.
 
 
 26
 The bankruptcy judge further pointed out that, in any event, the ground urged in support of the protective order was not one of the grounds specified within 26(c) of the Federal Rules of Civil Procedure.
 
 
 27
 District Court Transcript at 4-5. After hearing argument, the court ruled that the bankruptcy court did not abuse its discretion in awarding sanctions under Fed.R.Civ.P. 26(c) & 37(a)(4). As to the matter of Rule 11 sanctions, the court made the following remarks:
 
 
 28
 I understand the debtor's protestations, but I feel that simple resort to the Federal Rules of Civil Procedure would have alerted the debtor's counsel to the fact that a motion for protective order simply would not lie under these circumstances.
 
 
 29
 Further, looking to the full picture, not based on subsequent events that had been referred to here today by counsel for the creditors, but looking to the record on appeal, it seems apparent that the attorneys' office resulted in [aborting] the orderly processes of the judicial area, and there was no need for the motion to have ever been heard before the bankruptcy court.
 
 
 30
 Now, the problem is that the attorneys have appealed the order of sanctions of $500, and once again the creditors have asked this Court to [impose] sanctions under Rule 11. I regret to say that the motion is well taken, and I feel that the creditors should not be further put out or extended by this appeal, which I do not believe was brought with good grounds based upon fact or law.
 
 
 31
 District Court Transcript at 14-15. The court granted the Creditors' Rule 11 motion and imposed a sanction in the sum of $1,500 against Alonso. The underlying Chapter 7 bankruptcy case was dismissed on March 18, 1986. Alonso appeals the sanction orders of the bankruptcy and district courts. The Creditors request an additional award of attorneys fees and costs for this appeal pursuant to Fed.R.App.P. 38 and 28 U.S.C. Sec. 1927.
 
 II. RULE 37(a)(4) SANCTIONS
 
 32
 The trial court has great latitude in imposing sanctions under Rule 37, and we review such decisions for abuse of discretion. Reygo Pacific Corp. v. Johnston Pump Co., 680 F.2d 647, 649 (9th Cir.1982).
 
 
 33
 Akros brought its motion for protective order under Fed.R.Civ.P. 26(c). The rule provides that "[t]he provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion." Rule 37(a)(4) provides in pertinent part:
 
 
 34
 If the motion is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorneys fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.
 
 
 35
 Because this court is in as good a position as the district court to review the findings of the bankruptcy court, we independently review the bankruptcy court's decision. In re Pizza of Hawaii, Inc., 761 F.2d 1374, 1377 (9th Cir.1985). We apply the same standard of review as the district court. See Computer Communications, Inc. v. Codex Corp., 824 F.2d 725, 728 (9th Cir.1987).
 
 
 36
 At the outset, we note that both Rule 26(c) and Rule 37(a)(4) are applicable to adversary proceedings in the bankruptcy court. Bankr.R. 7026 and 7037. The test used by the bankruptcy court for determining the propriety of sanctions is set forth in the rule itself. The court shall order sanctions unless it finds that "the making of the motion was substantially justified or that other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(a)(4); see also Marquis v. Chrysler Corp., 577 F.2d 624, 641 (9th Cir.1978). A motion for protective order is substantially justified "if the motion raised an issue about which reasonable [people] could genuinely differ on whether a party was bound to comply with a discovery rule." C. Wright & A. Miller, Federal Practice and Procedure Sec. 2288 (1970); see also Reygo, 680 F.2d at 649.
 
 
 37
 We sustain the bankruptcy court's finding that the motion was not substantially justified because "since you don't have a client you can't seek a protective order on behalf of the client...." We also agree with the district court that simply reading the rules should have alerted counsel that this was not an appropriate case for a protective order. The rule provides that the court may make any order which justice requires to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense...." Fed.R.Civ.P. 26(c). None of those problems arise in this case because according to Alonso, there is no party to depose. Instead, it appears from the record, that the purpose of the motion was, as the bankruptcy court observed, to further the attorney's objective "to try to keep this adjudication from occurring...."
 
 
 38
 The plaintiffs' argument that Kakuwa v. Sanchez, 498 F.2d 1223, makes it "incumbent upon counsel for the corporation to make a motion for a protective order" is simply wrong. In that case, the attorney for the corporation attempted to bar the taking of a deposition of an officer who had resigned and was then residing in Japan. The attorney styled the motion: "Motion To Vacate and Set Aside The Notice of Taking Depositions By Oral Examinations And To Examine By Written Interrogatories Or Upon Written Questions." The district court there treated it as a motion for a protective order and denied it because the attorney filed it after the date scheduled for the deposition. In reversing, this court criticized the plaintiffs' "clumsy efforts to achieve the end which these rules authorize" and held that the end could be achieved through a motion for written depositions of a person in a foreign country under Fed.R.Civ.P. 28(b) & 31. 498 F.2d at 1226. Kakuwa does not suggest that the proper means for barring a deposition of a corporation whose officers have resigned is to move for a protective order.
 
 
 39
 We agree with the bankruptcy court that the attorney should have appeared at the deposition and stated for the record that there were no remaining officers of Akros so that the creditors move for appointment of a trustee. The bankruptcy court did not abuse its discretion in determining that the motion was not substantially justified under the circumstances of this case.
 
 III. RULE 11 SANCTIONS
 
 40
 Whether specific conduct violated Rule 11 is a legal question which we review de novo. Golden Eagle Dist. Corp. v. Burroughs Corp., 801 F.2d 1531, 1538 (9th Cir.1986). The district court found that the appeal to that court was brought without good grounds in fact or law. We agree. However, this court has recently expressed "serious doubts" about the applicability of Rule 11 to appeals from the bankruptcy court to the district court. Gonzales v. Parks, 830 F.2d 1033, 1037 n. 8 (9th Cir.1987).
 
 
 41
 We hold that the district court's award of sanctions under Rule 11 on an appeal from the bankruptcy court was inappropriate. The Federal Rules of Civil Procedure are made explicitly inapplicable to "proceedings in bankruptcy ... except in so far as they may be made applicable thereto" by the Bankruptcy Rules. Fed.R.Civ.P. 81(a)(1). Appeals to district courts in bankruptcy cases are governed by Part VIII of the Bankruptcy Rules. Bankr.R. 8001-8019. Those rules do not contain any version of Rule 11. Although Part IX of the Bankruptcy Rules does include a rule that tracks Rule 11 virtually word for word, Bankr.R. 9011, the term "court" as used in Rule 9011 refers to a "bankruptcy court." Bankr.R. 9001(2). Thus, Rule 9011 governs only the initial proceeding in bankruptcy court. We recognize that other courts have applied Rule 11 and Rule 9011 to bankruptcy appeals. See, e.g., In re Jacobson, 47 Br. 476, 478 (D.Colo.1985) (ordering attorney's fees "as a sanction under Rule 9011, B.R., and Rule 11, F.R.Civ.P."). Those courts, however, seemed to assume Rule 11 and Rule 9011 applied without actually examining the question.
 
 IV. OTHER GROUNDS FOR IMPOSING SANCTIONS
 
 42
 The district court is, however, vested with other authority to impose sanctions on counsel. A district court may assess attorney's fees in response to attorney misconduct based upon the inherent power of the judiciary, or upon the authority conferred by 28 U.S.C. Sec. 1927. Toombs v. Leone, 777 F.2d 465, 471 (9th Cir.1985). See, e.g., Roadway Express, Inc. v. Piper, 447 U.S. 752, 756, 100 S.Ct. 2455, 2459, 65 L.Ed.2d 488 (1980) (courts are vested with inherent power to assess attorney's fees against counsel who willfully abuse judicial processes); and In re Peoro, 793 F.2d 1048 (9th Cir.1986) (affirming district court orders either assessing attorney's fees under Section 1927 for vexatious multiplication of proceedings or affirming bankruptcy court orders doing so).
 
 A. Section 1927
 Section 1927 provides:
 
 43
 Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.
 
 
 44
 The Fifth Circuit has upheld a district court's order assessing sanctions under Rule 11 and Section 1927 for prosecuting a frivolous appeal to the district court from a bankruptcy court order. In re Ginther, 791 F.2d 1151, 1155 (5th Cir.1986). While we disagree with the imposition of sanctions under Rule 11 in this context, we agree that the filing of a frivolous appeal from a bankruptcy court order can be an unreasonable and vexatious multiplication of proceedings and, therefore, subject to sanctions under Section 1927.
 
 
 45
 Sanctions under Section 1927 are appropriate only when counsel has acted "recklessly or in bad faith." United States v. Associated Convalescent Enterprises, 766 F.2d 1342, 1346 (9th Cir.1985), quoting United States v. Blodgett, 709 F.2d 608, 610 (9th Cir.1983); see Zaldivar v. City of Los Angeles, 780 F.2d 823, 829-32 (9th Cir.1986) (comparing Section 1927 with Rule 11, which does not require bad faith). Even where the district court fails to make an express finding as to the sanctioned counsel's state of mind, sanctions are appropriate so long as the record sets forth sufficient evidence to show recklessness or bad faith. Toombs, 777 F.2d at 471; Optyl Eyewear Fashion Int'l Corp. v. Style Companies, 760 F.2d 1045, 1051 (9th Cir.1985). Nor will the presence of some merit in counsel's actions necessarily preclude an award under Section 1927. Lone Ranger Television v. Program Radio Corp., 740 F.2d 718, 727 (9th Cir.1984). Section 1927, however, "only authorizes the taxing of excess costs arising from an attorney's unreasonable and vexatious conduct; it does not authorize imposition of sanctions in excess of costs reasonably incurred because of such conduct." United States v. Blodgett, 709 F.2d 608, 610-11 (9th Cir.1983).
 
 B. Inherent Power
 
 46
 District courts have the acknowledged power to "award attorney's fees for one party and against another (and in exaggerated cases directly against counsel) where an unfounded action or defense is brought or maintained in bad faith, vexatiously, wantonly, or for oppressive reasons." 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice p 54.78 (2d ed. 1987). In Roadway Express, 447 U.S. at 766, 100 S.Ct. at 2464, the Court observed that courts, under their inherent power, can properly charge fees against counsel for abusive litigation tactics. The Court noted that delay in litigation may constitute bad faith in the conduct of an action. Id. See Matter of Beverly Hills Bancorp, 752 F.2d 1334, 1340 (9th Cir.1984) (courts have "inherent power to award fees under equity whenever justice requires"). However, such sanctions may only be assessed after counsel has been given fair notice and an opportunity to be heard on the record. Roadway Express, 447 U.S. at 767, 100 S.Ct. at 2464.
 
 
 47
 We hold that the appeal of the bankruptcy court's order to the district court warranted sanctions. The attorneys continued to evade the deposition, using the same tactics that led to Alonso's conviction for contempt of court. Each time the creditors sought to depose an officer of the company, an Alonso attorney presented a new excuse to evade the deposition. First, the creditors were told that Carl Baker had resigned. Then, when the attorneys avoided an order compelling the deposition because the case was transferred to another court, they suggested that the creditors simply notice "an officer" rather than renew the motion before the new court. When the creditors followed that suggestion, Alonso moved for a protective order and scheduled the hearing one hour before the scheduled deposition. At the hearing on the motion for protective order, the bankruptcy court attempted to uncover key facts, such as who was paying the fees, but the new attorney claimed ignorance.[2] After the bankruptcy court imposed a rather modest sanction ($500), Alonso appealed the decision to the district court, raised no new arguments, repeated the old arguments, and misinterpreted Ninth Circuit authority. This record clearly demonstrates that the motion for protective order and the appeal of the imposition of sanctions for bringing that motion were filed in the context of a persistent pattern of clearly abusive litigation activity and were brought to harass the Creditors and delay resolution of the underlying bankruptcy case.
 
 
 48
 While the district court's award of sanctions cannot be upheld under Rule 11, an award of sanctions can be upheld under either Section 1927 or the court's inherent power to punish abuses of judicial process. We remand this issue to the district court to determine the proper basis upon which to impose sanctions consistent with the foregoing.
 
 V. COSTS ON APPEAL, RULE 38
 Fed.R.App.P. 38 provides:
 
 49
 If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.
 
 
 50
 We will award costs on appeal where there is an obvious result or the appeal is wholly without merit. Taylor v. Sentry Life Ins. Co., 729 F.2d 652, 656 (9th Cir.1984). The arguments presented here have been twice considered and twice rejected by the courts below. The result is obvious. Furthermore, for the reasons stated above, we find that they are wholly without merit. Ordinarily we would not hold that an appeal was frivolous if we concluded that a remand was required. Here, however, we remand for an extremely limited purpose--one that will not affect the merits of the dispute or change the outcome in any way. Moreover, the point in which we base our remand was not raised by appellant. Under these circumstances, a finding of a Rule 38 violation is appropriate, notwithstanding our remand. Accordingly, we award double costs and order the law firm of Andres Alonso to pay damages in the amount of Two Thousand Five Hundred Dollars ($2,500) in addition to all other sanctions, to counsel for the creditors, not later than thirty (30) days from the filing of this decision.
 
 
 51
 AFFIRMED and REMANDED.
 
 
 
 [1]
 We note that the procedures followed in this case appear to comport with this court's recent holding in In re Sequoia Auto Brokers, Ltd., Inc., 827 F.2d 1281, 1291 (9th Cir.1987) (bankruptcy judges cannot issue contempt orders; the bankruptcy judge must certify the facts to the district court to determine whether to issue the order)
 
 
 [2]
 A third attorney appeared at oral argument before this court, frustrating our attempts to get answers to the same questions